O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABRIC SELECTION, INC. a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> WAL-MART STORES, INC., a Delaware corporation; L'KORAL INCORPORATED, a California corporation, <br><br> Defendants. | Case No. CV 09-01537 DDP (FFMx) <br><br> **Order (1) Denying Defendant's Motion to Disqualify Plaintiff's Counsel (2) Denying Plaintiff's <u>Ex Parte</u> Application to Strike "New Matter" from Defendant's Reply Brief** <br><br> [Motion filed on October 14, 2009] |

Presently before the Court is Defendant Wal-Mart Stores, Inc. ("Wal-Mart")'s motion to disqualify Plaintiff Fabric Selection Inc. ("Fabric Selection")'s counsel. Wal-Mart contends that counsel for Plaintiff – Andrew V. Jablon and Michael C. Baum of the law firm Resch Polster & Berger LLP ("RPB") – represented Wal-Mart in a prior matter that is substantially related to the present action. Because of the close relationship between the two matters, Wal-Mart contends, Jablon and Baum had an ethical duty to obtain Wal-Mart's informed consent before undertaking to represent Fabric Selection

in this matter. Because they did not do so, Wal-Mart asks the Court to disqualify Jablon, Baum, and RPB.

As explained in greater detail below, Wal-Mart has not established either that RPB actually possessed confidential information adverse to Wal-Mart's interests in the present matter, or that the two matters at issue are substantially related to one another. Accordingly, the Court denies the disqualification motion.

**I. Background**

The following background facts are not in dispute.

Jablon and RPB were counsel of record for Wal-Mart in L.A. Printex Industries, Inc. v. Wal-Mart Stores, Inc., Case No. CV 04-4265 ("Printex Action"). (Jablon Decl. ¶ 1.) The Printex Action commenced on June 15, 2004. (Id. ¶ 2.) Plaintiff in that case sued Wal-Mart, two of Wal Mart's vendors (Fortune Casuals, LLC ("Fortune") and John Paul Richard, Inc. ("JPR")), Fortune's fabric supplier (Absolute Textiles, Inc. ("Absolute")), and JPR's supplier (Design Collection, Inc.) contending that the defendants had infringed on three of its copyrights. (Id.) Specifically, L.A. Printex alleged that Wal-Mart's sale of garments that contained certain protected fabric designs amounted to copyright infringement.

Wal-Mart tendered defense of the Printex Action to the vendor defendants (Fortune and JPR), and they in turn tendered their defense and indemnity obligations to the supplier defendants (Absolute and Design Collection). (Id. ¶ 3.) The supplier defendants engaged RPB as counsel. (Id.) RPB, through Baum and Jablon, served as counsel of record for Fortune, JPR, Absolute,

2

1  Design Collection, <u>and</u> Wal-Mart.  On November 22, 2005, just before
2  the case was set to go trial, the parties settled the Printex
3  Action.  (<u>Id.</u> ¶ 4.)
4      Approximately one year later, RPB began representing an
5  unrelated printer in a dispute against Wal-Mart and several other
6  vendors.  (<u>Id.</u> ¶ 8.)  The case was resolved by settlement agreement
7  on March 16, 2006.  (<u>Id.</u> ¶ 9.)  On April 27, 2006, an attorney in
8  Wal-Mart's Legal Department sent Baum a letter "terminat[ing],
9  effective immediately, the attorney-client relationship between
10 Wal-Mart and [RPB]."  (Jablon Decl. Ex. 3.)  The letter instructed
11 RPB to "return immediately any and all files, papers, electronic
12 documents and any other materials in your possession relating to
13 your representation of Wal-Mart in the Printex Matter," and
14 reminded RPB and its attorneys of their obligation to comply with
15 ethical obligations to Wal-Mart as a former client, including the
16 maintenance of "strict confidentiality" with respect to information
17 they may have had access to.  (<u>Id.</u>)
18     Jablon sent a cease and desist letter to Wal-Mart on behalf of
19 Fabric Select (Plaintiff in this matter) on October 2, 2008,
20 contending that Wal-Mart had infringed on Plaintiff's copyright in
21 a particular fabric design.  (<u>Id.</u> ¶ 11.)  Wal-Mart responded,
22 through Laura Chapman (counsel of record for Wal-Mart in the
23 present matter) on October 26, 2008.  (<u>Id.</u>)  Plaintiff brought this
24 action against Wal-Mart and L'Koral Incorporated (a garment
25 manufacturer and Wal-Mart vendor) on March 4, 2009.
26     Approximately seven months later, on September 22, 2008, Wal-
27 Mart's counsel raised the issue of disqualification for the first
28 ///

3

time. (Id. ¶ 16.) Wal-Mart filed this disqualification motion on October 14, 2009. (Dkt. No. 32.)

**II. Discussion**

    A.   Legal Standard

"The trial court is vested with the power '[t]o control in furtherance of justice, the conduct of its ministerial officers.'" Henriksen v. Great Am. Sav. & Loan, 14 Cal. Rptr. 2d 184, 186 (Ct. App. 1992). The Court's inherent power includes the power to disqualify an attorney. Id.

The starting point for the Court's analysis is California Rules of Professional Conduct, Rule 3-310(e) ("Avoiding the Representation of Adverse Interests").[1] It provides, in relevant part, that:

> "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

"The purpose of [this] rule is to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends. The fiduciary nature of that relationship requires the application of strict standards. For that reason, a former client may seek to disqualify a former attorney from representing an adverse party . . . ." Henriksen, 14 Cal. Rptr. 2d at 186 (internal citations omitted).

---

[1] The Central District of California has adopted the Rules of Professional Conduct of the State Bar of California, and the decisions construing them, as the governing standards of professional conduct. See C.D. Cal. L.R. 83-3.1.2.

4

In order to prevail on a motion to disqualify, the moving party and former client must demonstrate either: (1) that the former attorney actually possesses confidential information adverse to the former client; or (2) that there is a "'substantial relationship' between the former and current representation." H.F. Ahmanson & Co. v. Salomon Bros., Inc., 229 Cal. App. 3d 1445, 1452 (Ct. App. 1991) ("Ahmanson"). "If the former client can establish the existence of a substantial relationship between representations, the courts will conclusively presume the attorney possesses confidential information adverse to the former client." Id. "This inquiry calls for a careful comparison between the factual circumstances and legal theories of the two cases." In re County of Los Angeles, 223 F.3d 990, 994 (9th Cir. 2000).

In deciding whether there is a substantial relationship, a court should consider the following factors: (1) the similarities between the two factual situations; (2) the legal questions posed; (3) the nature and extent of the attorney's involvement with the cases; (4) the time spent by the attorney on the earlier representation; (5) the type of work the attorney performed; and (6) the potential that the attorney was exposed to formulation of policy or strategy.[2] See Ahmanson, 229 Cal. App. 3d at 1454-55. "It remains the former client's burden to show both the fact of the former representation and the existence of a substantial relationship between the former and current representations." In re Charlisse C., 84 Cal. Rptr. 3d 597, 613 n.11 (2008).

---

[2] Below, the Court refers to these six criteria as the "Ahmanson factors."

5

1     The <u>Ahmanson</u> test "is necessarily fact-dependent," <u>UMG Recordings, Inc. v. MySpace, Inc.</u>, 526 F. Supp. 2d 1046, 1060 (C.D. Cal. 2007), and the decision to grant a motion to disqualify rests with the sound discretion of the trial court, <u>see</u> <u>Henriksen</u>, 14 Cal. Rptr. 2d at 186.

B.   Analysis

Wal-Mart has not identified any confidential information that RPB gained access to in the course of the Printex Action that warrants disqualification in this matter.[3]  <u>See</u> <u>Fremont Indem. Co. v. Fremont Gen. Corp.</u>, 49 Cal. Rptr. 3d 82, 95 (Ct. App. 2006) ("To create a conflict requiring disqualification . . . the information acquired during the first representation [must] be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation."). Instead, it contends that the Printex Action and the present matter are substantially related, and thus, exposure to relevant confidential information must be presumed.

---

[3]   In its reply brief, Wal-Mart appears to contend that RPB, in the course of the Printex Action, gained access to specific confidential material that is relevant in the present action. Holding aside the fact that it improperly raised this argument for the first time in its reply brief, Wal-Mart has not identified what specific <u>material</u> confidential information Jablon and RPB obtained. <u>See</u> <u>Trone v. Smith</u>, 621 F.2d 994, 998 (9th Cir. 1980) (explaining that disqualification is the appropriate remedy where "there is a reasonable probability that confidences were disclosed [in an earlier representation] <u>which could be used against the client</u> in [a] later, adverse representation" (emphasis added)). Because Wal-Mart bears the burden of proving the predicates for disqualification, its undefined references to shared confidences fall short. Denying a litigant its counsel of choice is, after all, a "drastic measure" that "should only be imposed when absolutely necessary." <u>Concat LP v. Unilever, PLC</u>, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004).

6

The Court agrees with Fabric Selection that the balance of the <u>Ahmanson</u> factors weighs against disqualification.

First, Wal-Mart has not identified any concrete <u>factual</u> similarity between the Printex Action and the present matter. At a very general level, both cases involve allegations of garment design copyright infringement, but the suppliers, vendors, and fabric designs themselves are dissimilar.

Next, the nature and extent of RPB's involvement in the Printex Action, vis-à-vis Wal-Mart, cuts against disqualification. Wal-Mart's vendors and suppliers indemnified the company in the Printex Action. As a result, Wal-Mart did not direct defense strategy, and it was not RPG's primary contact point in carrying out the litigation – indeed Wal-Mart was two-layers of liability removed from the parties' responsible for the defense of the Printex Action.

The time spent, type of work performed, and exposure to formulation of strategy or policy factors (again, vis-à-vis Wal-Mart) also tip the <u>Ahmanson</u> balance against disqualification. According to Jablon's declaration, RPB's contact with Wal-Mart in connection with the Printex Action was "limited to communications with an attorney and paralegal in Wal-Mart's legal department who were responsible for responding to discovery responses, and who independently made the determination as to what documents were or were not responsive to discovery requests."[4] (Opp'n at 14.) Further, counsel for Plaintiff contends, Wal-Mart did not

---

[4] Wal-Mart contests Baum and Jablon's account of the representation, but again, they do not identify any specific information that the RPB lawyers had access to in the course of the Printex Action that is material to the present matter.

7

participate in mediations or settlement negotiations.  (Id.) Accordingly, the Court concludes that the derivative nature of RPB's prior representation makes it very unlikely that lawyers at the firm were exposed to private information that could provide any strategic advantage in the present matter.

Wal-Mart is correct that the legal issues presented in both matters are similar.  Both cases concern garment design copyright infringement, both involve questions of vendor and retailer liability, and as Wal-Mart stresses in its reply brief, the damages issues (i.e., lost profits analysis) overlap to some extent.  Given that the other Ahmanson factors cut against disqualification, however, the Court cannot conclude that overlapping legal issues alone establish a substantial relationship between the two matters. See Saint Teresa Citizen Action Group v. City of San Jose, 7 Cal. Rptr. 3d 868, 885-86 (Ct. App. 2003) ("[E]ven where the two representations involve the same general subject, disqualification is not required if the nature of the factual and legal questions posed are not similar.").

An additional consideration contributes to the Court's conclusion that disqualification is not appropriate in this case. The parties settled the Printex Action approximately three and a half years before the commencement of the present action.  In the intervening period, Wal-Mart expressly terminated its relationship with RPB, and requested the return of all confidential material. The two matters are thus remote in time from one another, and separated by an unequivocal severance of the attorney-client relationship.

///

8

Having concluded that Wal-Mart's motion to disqualify fails on the merits, the Court expresses no opinion on Plaintiff's laches defense.

**III. Conclusion**

For the reasons set forth above, the Court DENIES Wal-Mart's motion to disqualify Plaintiff's counsel.  Because the Court denies the disqualification motion, Plaintiff's ex parte application to strike "new matter" from Wal-Mart's reply brief (Dkt. No. 43) is denied as moot.

IT IS SO ORDERED.

Dated: November 17, 2009

DEAN D. PREGERSON
United States District Judge